IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Lecinda Zimmerman, | § | |
| | § | |
|    *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action No. 5:18-cv-00521-C |
| | § | |
| General Motors LLC and | § | |
| Utility Trailer Manufacturing | § | |
| Company | § | |
| | § | |
|    *Defendants.* | § | |

PLAINTIFF'S FIRST AMENDED COMPLAINT

**To the Honorable United States Judge of Said Court:**

COMES NOW, Lecinda Zimmerman (hereinafter referred to as "Plaintiff"), and respectfully files this First Amended Complaint against General Motors LLC and Utility Trailer Manufacturing Company (hereinafter referred to as "Defendants"), and in support hereof would state and show the following:

### I. Parties

1. Plaintiff Lecinda Zimmerman is the biological mother of Kaylyn Gatlin, deceased. She resides in and is a citizen of Mountain View, Oklahoma.

2. Defendant General Motors LLC is a Delaware limited liability company with its principal place of business in Michigan. Its sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is

General Motors Company, a Delaware corporation with its principal place of business in the Michigan. Service of process upon this Defendant may be had by serving its registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-4234.

3.   Defendant Utility Trailer Manufacturing Company is a California corporation. Service of process upon this Defendant may be made by serving its registered agent for service, Paul G. McNamara, 17295 East Railroad Street, City of Industry, California 91748.

## II. Subject Matter Jurisdiction

4.   This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

5.   The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Venue

6.   The accident in question occurred in Blaine County, which falls in the Western District of Oklahoma.

## IV. Facts

7. On or about September 1, 2017, Kaylyn Gatlin was driving a 2017 Buick Encore (VIN# KL4CJASB2HB034837)("subject vehicle") traveling northbound on County Road N. 2500 in Watonga, Oklahoma.

8. The subject vehicle was designed by General Motors LLC.

9. The subject vehicle was manufactured by General Motors LLC.

10. The subject vehicle was distributed by General Motors LLC.

11. The subject vehicle was also assembled and tested by General Motors LLC.

12. While traveling, the subject vehicle struck a trailer, and became pinned under the trailer causing the trailer to drag the subject vehicle.

13. The subject trailer was designed, manufactured, distributed, assembled, and/or tested by Defendant Utility Trailer Manufacturing Company.

14. At the time of the accident, Kaylyn Gatlin was properly seated and properly wearing the available seat belt.

15. However, Kaylyn Gatlin sustained fatal injuries during the accident sequence because her vehicle failed to protect her due to violating several crashworthiness principles. In addition, the subject Utility Trailer was not crashworthy as well.

16. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    1. Maintain survival space;

    2.    Provide proper restraint throughout the entire accident;

    3.    Prevent ejection;

    4.    Distribute and channel energy; and

    5.    Prevent post-crash fires.

17. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

18. The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

19. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

### V. Cause(s) of Action as to General Motors LLC

Plaintiff's First Amended Complaint
Page 4 of 15

20. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

21. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

22. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

23. As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

24. Defendant either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to Kaylyn Gatlin.

25. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed,

manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

 a. The vehicle's front and side structure failed to protect against occupant compartment intrusion;
 b. The vehicle's front and side structure failed to protect against safety cage intrusion;
 c. The vehicle failed to utilize UHSS, AHSS, boron, ferrite, martensite, complex phase, dual phase and TRIP steel in the front and side structures;
 d. The vehicle's side curtain failed to deploy;
 e. The vehicle's front airbag failed to deploy;
 f. The vehicle's head and torso bags failed to deploy;
 g. The vehicle was not properly tested in override/underride type impacts;
 h. The vehicle was not subjected to rigorous engineering analysis;
 i. The vehicle was not subjected to FEM, FEA and finite element modeling with different designs and materials;
 j. The vehicle violated principles of crashworthiness;
 k. The vehicle violated principles of consumer expectation; and/or
 l. The vehicle was not properly tested.

26. Defendant further failed to conduct proper testing and engineering analysis during the design, development and testing of the vehicle.

27. Defendant was further negligent in the manufacture, assembly, marketing, and/or testing of the vehicle in question.

28. As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

29. Accordingly, since paramount means "superior to all others", all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles. Indeed, General Motors has admitted that its engineers have to hold paramount the safety, health, and welfare of the public.

30. However, Defendant General Motors failed to conduct proper testing and engineering analysis during the design, development, and/or testing of the vehicle.

31. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death. General Motors has admitted this in sworn testimony.

32. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

33. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

34. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

35. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

36. Based upon information and/or belief, the subject vehicle was not subjected to rigorous engineering analysis.

37. Based upon information and/or belief, the subject vehicle was not subjected to FEM, FEA, or finite modeling to evaluate different designs and material.

38. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

39. When General Motors designed the subject vehicle, it did not reinvent the wheel. General Motors used (or should have used) an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicles. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make the vehicle safer in foreseeable accidents.

40. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis it performed.

41. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

42. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

43. The foregoing acts and/or omissions, defects, and/or negligence of Defendant were the producing, direct, substantial, proximate, and/or legal cause of Kaylyn Gatlin's fatal injuries, and Plaintiff's damages.

## VI. Cause(s) of Action as to Utility Trailer Manufacturing Company

44. It was entirely foreseeable to and well-known by the Defendant that underride accidents and incidents involving its trailers, such as occurred herein, would on occasion take place during the normal and ordinary use of said trailer.

45. The injuries and damages complained of herein occurred because the trailer in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The trailer in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

46. As detailed herein, the trailer contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

47. Defendant either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to Kaylyn Gatlin.

48. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said trailer in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the trailer was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a.    The trailer lacked an adequate side underride guard;
    b.    The protection provided by the Defendant was not as effective as those installed on like trailers in Europe and/or other areas of the world; and/or
    c.    the trailer was not reasonably crashworthy.

49. Defendant was further negligent in failing to conduct any engineering analysis whatsoever as it relates to the societal benefits, safety benefits, or economic benefits associated with the use of adequate guards.

50. Defendant further failed to conduct proper testing and engineering analysis during the design, development and testing of the trailer.

51. As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number 1 fundamental

canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

52. Accordingly, since paramount means "superior to all others", all engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design products, such as trailers.

53. However, Defendant failed to conduct proper testing and engineering analysis during the design, development, and/or testing of the trailer.

54. In designing a trailer, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

55. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

56. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

57. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

58. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

59. Based upon information and/or belief, the subject trailer was not subjected to rigorous engineering analysis.

60. The foregoing acts and/or omissions, defects, and/or negligence of Defendant were the producing, direct, substantial, proximate, and/or legal cause of Kaylyn Gatlin's fatal injuries, and Plaintiff's damages.

## VII. Damages to Plaintiff

61. As a result of the acts and/or omissions of one or more of the Defendants, Plaintiff has suffered wrongful death damages as a result of the death of Kaylyn Gatlin.

62. As a result of the acts and/or omissions of one or more of the Defendants, Plaintiff has become obligated to pay reasonable and necessary funeral and burial expenses as a result of the fatal injuries to Kaylyn Gatlin.

63. The above and foregoing acts and/or omissions of one or more of the Defendants, resulting in the fatal injuries to Kaylyn Gatlin, have caused actual damages to Plaintiff in excess of the minimum jurisdictional limits of this Court.

## VIII. Jury Demand

64. Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and respectfully demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX. Prayer

65. For the reasons presented herein, Plaintiff prays that Defendants be

cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against one or more of the Defendants for:

a. actual damages;
b. prejudgment and post-judgment interest beginning September 1, 2017;
c. costs of suit; and
d. all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

\_\_\_/s John Branum_____
John Branum, OBA #20165
john@branumlawfirm.com
Jay M. Mitchel, OBA #20784
jay@branumlawfirm.com
**Branum Law Firm, PLLC.**
9600 South May Avenue
Oklahoma City, OK 73159
(800) 318-9950 – Phone
(800) 418-8210 – Fax

*And*

E. Todd Tracy
(*Anticipated Pro Hac Vice*)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Andrew G. Counts
(*Anticipated Pro Hac Vice*)
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
**The TRACY firm**
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2018, I caused to be elec-tronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Oklahoma, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Elec-tronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

      /s John Branum
John Branum
Jay M. Mitchel

Plaintiff's First Amended Complaint
Page 15 of 15